## Mayer *versus* Walter.

| 64 | 283 |
|---|---|
| 152 | 487 |

| 64 | 283 |
|---|---|
| 168 | 197 |
| 168 | 493 |

| 64 | 283 |
|---|---|
| 191 | 423 |

| 64 | 283 |
|---|---|
| 192 | 342 |

| 64 | 283 |
|---|---|
| 22 SC | ⁵196 |

| 64 | 283 |
|---|---|
| e 28 SC | 135 |

| 64 | 283 |
|---|---|
| 214 | 413 |
| 214 | ¹415 |

1. A malicious abuse of legal process is where it is employed for some unlawful object not the purpose intended by law.

2. In an action for such abuse it is not necessary to prove that the action on which the process issued has been determined, or to aver that it was sued out without probable cause.

3. It is immaterial whether the proceeding was baseless or not.

4. Legal process may be maliciously used so as to give a cause of action, where no object but its proper effect and execution is contemplated.

5. In such case both malice and want of probable cause must be averred and proved, and the proceeding must be determined before an action can be maintained.

6. The declaration need not be on the merits.

7. When the proceeding has been terminated by a compromise an action for damages will not lie.

8. Such action cannot be supported when in the original action it was necessary to set up some collateral defence which did not appear in the declaration or the instrument declared on.

9. A proceeding before an alderman was reversed on certiorari; this, although not followed by judgment for defendant, was an end of the case, so as to found an action against the plaintiff.

10. A mere suit however malicious or unfounded cannot be the ground of an action for damages, if the defendant or his goods be not seized.

February 17th 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 203, to January Term 1870.

This was an action on the case for malicious abuse of legal process, brought March 28th 1868, by George Mayer against John Walter.

Mayer was the tenant of Walter. On the 13th of September 1866 Walter commenced proceedings against Mayer to obtain possession of the leased premises, and on the 24th judgment was rendered in favor of Walter. On the 5th of October Mayer sued out a certiorari. On the 29th of November, Walter was put into possession under a writ of possession. On the 10th of December, the Court of Common Pleas on the certiorari, reversed the proceedings of the alderman; to the judgment of the Court of Common Pleas, a writ of error was taken to the Supreme Court,

[Mayer *v.* Walter.]

which was non-prossed March 2d 1867. On the 23d of March, on the petition of Mayer, the Court of Common Pleas granted a rule to show cause why a writ of restitution should not issue; the rule was discharged May 18th. On the 28th of March 1868, the court allowed Mayer to withdraw his petition for a writ of restitution. On the trial the court (Hare P. J.) charged the jury that "before they would be justified in rendering a verdict for the plaintiff they should be satisfied from the evidence that Walter had no right to commence the proceedings for possession before the alderman, and that there was no reasonable or probable cause for belief that he had such a right, and that such proceedings were *malicious*;" and reserved for the determination of the court in banc, the question "whether the plaintiff could maintain this action in the absence of any judgment in his favor upon the merits in the proceedings before the alderman."

The jury rendered a verdict for the plaintiff for $1000. The court afterwards entered judgment for the defendant *non obstante veredicto* on the reserved point, Judge Hare delivering the following opinion:—

"It is well settled that a recovery cannot be had for the injury inflicted by an unfounded action, unless the party who makes complaint obtained judgment, or there was a plain confession of want of right on the part of the plaintiff in the former suit. I do not now speak of suits for the abuse of civil process by obtaining a collateral and unfair advantage, which is not pretended here, but of those where the wrong consists in an arrest, or an eviction, which, though warranted by the writ, was without sufficient cause. But for this rule, the termination of one suit would be, in a multitude of instances, the signal for the institution of another, in which the parties would be reversed; and the process might be renewed indefinitely, in contravention of the maxim *interest reipublicæ ut sit finis litium*. It has therefore wisely been resolved that no liability shall arise from bringing a suit, unless the termination of it shows that it was instituted without sufficient cause. It has indeed been said, in some instances, that if the plaintiff obtains judgment in the tribunal in which the suit is brought, a subsequent judgment for the defendant in a court of error will not set the matter sufficiently at large to leave the way open for an action of damages on his part. If this were conceded, it would be conclusive here, where the magistrate rendered a judgment in favor of the plaintiff. Without going so far, it would seem very clear that the reversal of a judgment in favor of the plaintiff will not let the defendant in to show want of probable cause, unless the reversal is accompanied or followed by a judgment in favor of the defendant. A judgment may be, and often is, reversed on grounds which do not touch the right, but only the manner in which it was enforced; that the declaration

[Mayer v. Walter.]

contained a defective count, or that the court gave an erroneous instruction to the jury. If the Common Pleas, after sustaining the exceptions to the proceedings before the magistrate, had gone on to award restitution, it would have been conclusive evidence that the right was in the tenant, and the latter would then have been free to show that the landlord had taken measures to evict him, maliciously and without sufficient cause. But that court refused to make such an award: and the rule which had been obtained for the purpose, was, after being reinstated, finally withdrawn by the tenant. Having declined to bring the matter to an issue before the tribunal to which it properly belonged, he cannot now renew the controversy here.''

The plaintiff took a writ of error and assigned for error the entering of the judgment on the reserved point.

*B. Woodward* and *G. W. Biddle*, for plaintiff in error.— An action will lie for abuse of civil powers: Sommer v. Wilt, 4 S. & R. 19; Foster v. Sweeney, 14 Id. 386; Prough v. Entriken, 1 Jones 85; Barnett v. Reed, 1 P. F. Smith 190; Stone v. Swift, 4 Pick. 389; Wills v. Noyes, 12 Id. 324; Savage v. Brewer, 16 Id. 453; Paughborn v. Bull, 1 Wend. 345; Burt v. Place, 4 Id. 591; Ewing v. Landford, 19 Ala. 605; Weaver v. Page, 6 Cal. 681; Page v. Cushing, 38 Maine 523; Temple v. Killingworth, 12 Mod. 4; Van Duzor v. Linderman, 10 John. 106; Brown v. Chapman, 1 W. Black. 427. The reversal of the alderman's judgment was a decision in Mayer's favor: it need not be a decision on the merits.

*W. L. Budd*, for defendant in error.—The plaintiff must prove a suit with malice and without probable cause, and its final termination: Wilkinson v. Howell, 1 Moody & M. 495.

The judgment of a justice, though founded upon a mistake in law, is an estoppel of the denial of want of probable cause: Herman v. Brookerhoff, 8 Watts 240. The compromise of a suit is conclusive evidence of probable cause: Clark v. Everett, 2 Grant 216; Munson v. Austin, 2 Phila. R. 116; Wengert v. Beashore, 1 Penna. R. 233; Kramer v. Stock, 10 Watts 118; McCullough v. Grishobber, 4 W. & S. 201.

The Court of Common Pleas might refuse a writ of restitution: McGee v. Fessler, 1 Barr 131. An action of this kind will not lie without arrest or seizure of property: Ray v. Law, 1 Pet. C. C. 210; Kramer v. Stock, 10 Watts 118.

The opinion of the court was delivered, February 28th 1870, by

SHARSWOOD, J.—There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose which

[Mayer *v.* Walter.]

it is intended by the law to effect; in other words, a perversion of it. Thus, if a man is arrested, or his goods seized in order to extort money from him, even though it be to pay a just claim other than that in suit, or to compel him to give up possession of a deed or other thing of value, not the legal object of the process, it is settled that in an action for such malicious abuse it is not necessary to prove that the action in which the process issued has been determined, or to aver that it was sued out without reasonable or probable cause: Grainer *v.* Hill, 4 Bing. N. C. 212. It is evident that when such a wrong has been perpetrated, it is entirely immaterial whether the proceeding itself was baseless or otherwise. We know that the law is good, but only if a man use it lawfully.

On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated to be gained by it other than its proper effect and execution. As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause. It is clearly settled also, that the proceeding must be determined finally before any action lies for the injury; because, as it is said in Arundell *v.* Tregono, Yelv. 117, the plaintiff will clear himself too soon, viz., before the fact tried, which will be inconvenient; besides, the two determinations might be contrary and inconsistent.

The case before us evidently was that of a malicious use of legal process. All the analogies of an action for a malicious arrest or seizure of goods under an execution fairly belong to it: Beach *v.* Wheeler, 12 Harris 212, s. c. 6 Casey 69; Sommer *v.* Wilt, 4 S. & R. 23. It is necessary that the proceeding should have come to an end, and that end must have been a successful one to the plaintiff; otherwise it shows actual, which is more than probable, cause; but it seems to have been considered by the learned court below that it must also appear that the determination in favor of the plaintiff has been on the merits, and on that ground they entered judgment for the defendant on the point reserved.

The soundness of a principle is often best tested by its practical working. If, in the application of it, it is manifest that an admitted wrong may be left without any remedy, we may be confident that there is a fallacy somewhere in the reasoning from which it is deduced. We will take the case of a malicious arrest, without reasonable or probable cause, in a civil action. The plaintiff, when ruled to declare, refuses, and the only mode by which the defendant can bring the action to an end is by a judg-

[Mayer v. Walter.]

ment for want of a declaration. Here there is no decision in his favor on the merits. If the principle asserted be sound, the defendant in that case, though he has suffered an acknowledged wrong, is deprived of all remedy without any fault on his part. The authorities are not so. In Pierce v. Street, 3 B. & Ad. 397, it was decided that in an action for a malicious arrest in a civil suit, proof that no declaration was filed or delivered within a year after the return of the writ is sufficient to show a determination of that suit. So in Brook v. Carpenter, 3 Bing. 297, it was held that an action may be brought to recover damages for lodging a detainer against the plaintiff, maliciously and without probable cause, when the suit is terminated by a rule of court.

In Jones v. Given, Gilbert's Cases 185, Chief Justice Parker, in a most elaborate opinion, shows that although in a writ of conspiracy for a false appeal or indictment of treason or felony, it was necessary to prove that the plaintiff had been lawfully acquitted, it was otherwise in an action on the case. The reason was that a writ of conspiracy was a formed action, one of the *brevia formata* in the register, in which it was alleged that the plaintiff *secundum legem et consuetudinem regni nostri acquietatus fuisset:* F. N. B. 276, and such forms must be strictly pursued *quæ quidem nullatenus mutari poterint;* while in an action on the case a latitude is allowed, *variantur secundum varietatem casuum,* and nothing is made necessary but what the reason of the thing makes so. See 1 Inst. 73 b. In the course of that opinion he lays down this rule, which seems fully to meet and answer the true justice and reason of the case : "That the determination must be such as does not admit a reasonable cause for the prosecution; as if a pardon be pleaded which admits in some sort guilt, however is quitting the vindication of innocence, or justification, which admits the fact, and consequently reasonable cause of complaint." So it has been held in this court that when the proceeding has been ended by a compromise, it debars the defendant from any action for damages : Clark v. Everett, 2 Grant 416. And, as a general rule, it may be laid down that such an action cannot be supported when in the original action the defendant was obliged to set up some collateral matter by way of defence, which did not appear on the declaration or the face of the instrument declared on : Wengert v. Beashore, 1 Penna. R. 232; though it should be noted that that was said in an action against executors.

It is more than probable, however, that the learned court below did not mean to affirm the abstract proposition stated in the reserved point in so broad a form. They meant to confine it to the case of a reversal of a judgment of an alderman on certiorari or appeal; and their precise position seems to have been that such reversal is not enough, unless followed by a judgment for the defendant. But the reversal of judgment in that proceeding

[Mayer *v.* Walter.]

was an end of the cause; as much certainly as a nonsuit, or judg
ment for want of a *narr*.   Mr. Justice Rogers, in Gibbs *v.* Bart-
lett, 2 W. & S. 35, states that the entry of judgment reversed in
this court without more, according to our practice, is a final judg-
ment.   *Non constat,* whether the reversal was upon the merits or
not.   It may well have been.   The record may have shown that
the defendant's term had not expired, or that he had not received
lawful notice to quit.   That surely would have been a judgment
on the merits.   But suppose the error alleged was that the
defendant had not been summoned, and that judgment had been
rendered against him without his having had an opportunity to
be heard.   This may not be regarded as a reversal on the merits,
but in reason it ought to make no difference.   Could the original
judgment well be said to have been given on the merits if the
defendant had no opportunity to be heard?   I am speaking now
only of an hypothetical case, not of this case; for the exceptions
on which the reversal took place are not spread on this record.
Certainly, to apply to it the rule of Chief Justice Parker, the re-
versal is not such a determination of the action as admits a
reasonable cause for the institution of it.

If by the legal effect of the reversal on certiorari there was no
judgment, if it was pronounced erroneous and illegal, why should
it continue to work an estoppel, conclusive on the plaintiff that
there was probable cause for the proceeding?   To this extent
the doctrine must go to sustain this judgment on the reserved
point.   Evidence, primâ facie, it may have been, very cogent
under some circumstances, and if the party fairly submitted a
true statement of the case to the magistrate, and was guided by
his advice, that might negative the want of probable cause, though
the facts did not warrant the proceeding: Le Maistre *v.* Hunter,
Bright. Rep. 494; Walter *v.* Sample, 1 Casey 275.   But
conclusive *per se* it must be held to be, if this plaintiff, having
obtained a verdict on evidence showing malice and want of proba-
ble cause, is to be turned out of court.   How can it have this
conclusive effect legitimately attributed to it, if it is no longer a
judgment at all?   I have not overlooked the case of Reynolds *v.*
Kennedy, 1 Wils. 232, cited with apparent approbation by Chief
Justice Gibson, in Herman *v.* Brookerhoff, 8 Watts 240.   It was
there held that a condemnation of goods by sub-commissioners
of excise, though reversed on appeal to the Commissioners of
Appeal, disproves the allegation of want of probable cause for
the information, and consequently bars an action for malicious
prosecution against the informer.   I question very much if the
case would have been so decided had it not arisen under the
revenue laws, and been influenced by a governmental policy for
the protection of informers.   But however that may be, the case
goes much too far for the qualified doctrine here maintained; for

[Mayer v. Walter.]

the reversal there was expressly averred to have been upon the merits, and the ground of the decision, as stated by Chief Justice Lee, was this: "Although it is said that the Commissioners of Appeal most justly reversed the judgment of condemnation of the sub-commissioners, yet we are all of opinion the plaintiff is not entitled to this action; for we cannot infer from the judgment of reversal of the Commissioners of Appeal that the defendant, the prosecutor, was guilty of any malice, and the judgment of the sub-commissioners has justified the proceeding before them." But the plaintiff had averred malice, and the jury had found it; though it is worthy of observation that the declaration did not allege want of probable cause. The reason assigned by Chief Justice Lee for this conclusion does not to my mind sustain it. "If an action upon a false surmise be brought against me in a proper court, I cannot have an action against him that brought it, and charge him with it as a fault directly, as if the suit itself was a wrong act, for *executio juris non habet injuriam*: Hob. 266. And the gist of this sort of actions arises from some evil practice or malice in him who sues or prosecutes: Lutw. 1571." Now, undoubtedly, a mere suit, however malicious or unfounded, cannot be made the ground of an action for damages. If the person be not arrested or his property seized, it is unimportant how futile and unfounded the action may be; as the plaintiff, in consideration of law, is punished by the payment of costs: Ray v. Law, 1 Peters C. C. 210; Kramer v. Stock, 10 Watts 115. Originally, indeed, the common law made provision to hinder malicious and vexatious suits, that every plaintiff should find pledges, who were amerced if the claim was false; which judgment was always given, and then a writ issued to the coroners, and they affeered them according to the proportion of the vexation. But that method became disused, and then to supply it, the statutes gave costs to the defendants. And, as Lord Holt remarks, though this practice of levying of amercements be disused, yet the court must judge according to the reason of the law, and not vary their judgments by accidents: Savill v. Roberts, 1 Ld. Raym. 380. Surely that an action cannot be maintained to recover damages for a mere unfounded suit, in no way tends to prove that when a judgment is reversed, the reversal must show on its face malice in the prosecutor. We cannot, therefore, consider Reynolds v. Kennedy as sufficient authority to establish it as law in this state, that the judgment of a magistrate under which a man has been arrested, his property seized and sold, or he has been turned out of possession of his house and home, when that judgment has been reversed on certiorari or appeal, shall conclude him in an action against the opposite party, in which he is able to prove that the plaintiff was actuated by malice, and had no reasonable or probable ground for the proceeding. The case would, perhaps,

14 P. F. Smith—19

[Mayer *v.* Walter.]

be entirely changed, if it appeared that the ground of the reversal was such as to admit necessarily that there was a reasonable cause for commencing the proceedings; as for example, where it went upon some collateral matter by way of defence: Wengert *v.* Beashore, 1 Penna. Rep. 232.

We see nothing in the proceedings in regard to the writ of restitution which stands in the way of the plaintiff's recovery. The application for the writ was at first refused by the court, but afterwards, on motion, reinstated and then withdrawn. Many considerations may have prevailed with the court at first in refusing, and the plaintiff afterwards in not persisting in his application. The term may have expired, or been so near expiring, as not to make it worth his while to procure that writ. His situation may have so changed in the mean time as not to make repossession desirable. It indicated, therefore, no admission as to the merits.

Judgment reversed, and now judgment for the plaintiff on the point reserved.