510 A.2d 822

**Mary Jane McGEE, Appellant,**

**v.**

**Edward H. FEEGE and Hayes & Feege PC and Charles W. Craven and Francis E. Marshall and Anthony P. Tinari and Marshall Dennehey & Warner and Travelers Insurance Company and Harry C. Shayhorn, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 21, 1986.

Filed June 9, 1986.

Paul Shalita, Philadelphia, for appellant.

Steven L. Sugarman, Paoli, for Feege, appellee.

Lois A. Wood, Philadelphia, for Tinari, appellee.

Curtis P. Cheyney, III, Philadelphia, for Travelers, appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

CAVANAUGH, Judge:

The roots of this case go back many years. Appellant, Mary Jane McGee, was injured in 1968 and claimed workmen's compensation. The employer agreed to pay compensation at the rate of $60.00 per week for an indefinite period of time and in 1970 petitioned to terminate the agreement. The referee denied termination of the agreement and the Workmen's Compensation Appeal Board vacated the referee's order. Subsequently, new testimony was taken before the referee who then suspended the agreement. The Workmen's Compensation Appeal Board affirmed the suspension and the Commonwealth Court affirmed the Board's order. An appeal was taken to the Supreme Court which reversed the Commonwealth Court's affirmance of the Workmen's Compensation Appeal Board's order and remanded the matter to the Board for further proceedings. *McGee v. L.F. Grammes & Sons, Inc.*, 477 Pa. 143, 383 A.2d 864 (1978). Subsequently, the Board directed that compensation be continued pursuant to the compensation agreement and the insurer filed a Petition for Clarification which the Supreme Court denied in *McGee v. L.F. Grammes & Sons, Inc.*, 485 Pa. 643, 403 A.2d 573 (1979).[1] Appellant was paid the compensation she was entitled to on July 18, 1979 with the appropriate interest.

In October, 1979 the appellant instituted an action in trespass against several lawyers, two law firms, a work-

---

1. In *McGee v. L.F. Grammes & Sons, Inc.*, 485 Pa. at 645, 403 A.2d at 574, Footnote 1, the court stated:

 1. This record presents a despicable example of a blatant misuse of the legal process to avoid payment of a legal obligation.

men's compensation referee and Travelers Insurance Company. The appellant alleged that she was maliciously deprived of her property from March 23, 1978 to April 23, 1979. (Paragraph 18 of the complaint). In 1985 the court below granted the defendants' motion for summary judgment and the plaintiff below has appealed to this court.

The court below determined that the plaintiff alleged that the defendants below (appellees herein) had committed the torts of abuse of process and malicious use of process and that in both torts a seizure of property must be established. Since it was clear from the affidavits, depositions and interrogatories on file that no seizure of property occurred, summary judgment was entered in favor of all appellees.

■ In order for the appellant to prevail under either the theory of abuse of process or malicious use of civil process, she must establish that she was deprived of her property or was arrested. *Blumenfeld v. R.M. Shoemaker*, 286 Pa.Super. 540, 429 A.2d 654 (1981).[2] There is a distinction be-

2. In *Blumenfeld v. R.M. Shoemaker*, 286 Pa.Super. 543–4, 429 A.2d 656, Judge Hoffman discussed the two causes of action in footnote 3 as follows:

> 3. Although litigants frequently alternatively plead causes of action for abuse of process and malicious use of process, our courts have attempted to distinguish the two causes of action.
>
> . . . . .
>
> The elements of the cause of action for malicious use of process are: the initiation of legal proceedings by the defendant, without probable cause, resulting in the arrest of the plaintiff or the seizure of his property, and ultimately terminating favorably to the plaintiff. *See, e.g., Publix Drug Co. v. Breyer Ice Cream Co., [347 Pa. 346, 32 A.2d 413 (1943)] supra.* Comparably, if a plaintiff is arrested or his property seized through the use of legal process, and the use of such process is not that for which it has been designed, the plaintiff has stated a cause of action for abuse of process notwithstanding his failure to establish prior termination or the absence of probable cause. *See, e.g., Mayer v. Walter,* 64 Pa. (14 Smith) 283, 286 (1870). *See generally* Restatement (Second) of Torts §§ 677, 682 (1977); W. Prosser, *Handbook on the Law of Torts* §§ 120–121 (4th ed.1971). Consequently, under Pennsylvania law, arrest of the person or seizure of his property is a necessary element of both causes of action. *See, e.g., Publix Drug Co. v. Breyer Ice Cream Co., supra; Mayer v. Walter, supra; Shannon v. Barrett,* 65 Pa.D. & C.2d 446 (C.P.Delaware Co.1974). Because appellee Blumenfeld clearly was

tween abuse of process and malicious use of process. *Ace v. Argonaut Insurance Company,* 307 Pa.Super. 200, 202–3, 452 A.2d 1384, 1385 (1982) points out that:

Decisions in this state and in other jurisdictions have drawn a distinction between *actions for abuse of legal process and* those for malicious prosecution, which, when founded on civil prosecutions, are usually described as *malicious use of civil process.* The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it: *Mayer v. Walter,* 64 Pa. 283 [1870]; annotation, 80 A.L.R. 581. 'An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. * * * On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated * * * other than its proper effect and execution.' *Mayer v. Walter, supra,* 64 Pa. page 285; *Johnson v. Land Title B. & T. Co.,* 329 Pa. 241, 242, 198 A.23 [1938]. Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued. All the analogies of an action for a malicious arrest belong to an action for malicious use of civil process.[3] (Emphasis added)

not arrested, appellees' contention focuses upon the seizure of property requirement.

**3.** The Act of December 19, 1980, P.L. 1296, No. 232, 42 Pa.C.S. § 8351(b) deals with wrongful use of civil proceedings and provides:
(b) Arrest or seizure of person or property not required.—The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.
Section 2 of the Act provides that it "shall take effect in 60 days and *shall be applicable to causes of action accruing thereafter."* (Emphasis added.) The cause of action in the instant case arose prior to October, 1979, and the Act does not apply. "The law of this Commonwealth prior to the passage of the Act of December 19, 1980, P.L. 1296, No. 232 (codified at 42 Pa.C.S.A. §§ 8351–54), required that a plaintiff prove an arrest of the person or seizure of property in order to state a cause of action for either malicious use of process or abuse of process." *Ace v. Argonaut Insurance Co.,* 307 Pa.Super. at 203, 452

While the distinction between abuse of process and malicious use of civil process are important, they are not germane in this case as under either theory, the appellant must establish that her property was seized or that she was arrested. There is no contention or indication that appellant was arrested so that the essential requirement is that her property was seized. With respect to seizure of the appellant's property, she contended in her complaint that she was "deprived of her property from March 23, 1978 [the date of the first Supreme Court opinion] to April 23, and thereafter." In her brief to this court the appellant contends that seizure arose from the following "undisputed facts":

On October 30, 1978, based on a final order of the Workman's Compensation Appeal Board (made final by order of the Supreme Court entered March 23, 1978), McGee took judgment against Travelers and issued execution. By the issuance of execution, McGee came into "possession/ownership" of the attached property, to the extent of her interest, and but for the Defendants' *malicious actions* involving the judicial process which followed, would have collected the full proceeds due her. (Emphasis added)

■ The facts concerning the alleged seizure are not in dispute and the court below properly concluded as a matter of law that they did not constitute a seizure of property. The fact that the appellant issued execution against Traveler's following judgment in the appellant's favor, did not constitute a seizure of her property. The judgment was paid in full with the appropriate interest. In *Blumenfeld v. Shoemaker, supra,* it was held that the indexing of a lis pendens against the plaintiff's property did not establish a lien against the property, and even though it temporarily clouded title it did not constitute seizure of property. In *Triester v. 191 Tenants Association,* 272 Pa.Super. 271, 415 A.2d 698 (1979) the owners of an apartment building alleged

A.2d at 1385. While the requirement of either arrest or seizure is eliminated from malicious use of civil process, one or the other must still be present for abuse of process.

that there had been a seizure of their property by a tenants association whose action in equity resulted in their loss of ownership in the property, their inability to attract condominium purchasers as a result of a cloud on title and loss of rental income as a consequence of a rent strike by the tenants.[4] We held that there was a failure to allege sufficient seizure to constitute a cause of action as the tenants' losses were incidental. "In determining what is a sufficient seizure for purposes of an action for malicious use of process, it is necessary to distinguish between those losses that result from a direct seizure resulting from the suit, and those that are mere indirect or incidental losses that may be associated with any legal proceeding." *Triester v. 191 Tenants Association*, 272 Pa.Super. at 281, 415 A.2d at 703. See also *Norcross v. Otis Brothers & Co.*, 152 Pa. 481, 25 A. 575 (1893) which held that there was no seizure of property by the defendants' instructions to a third party not to pay a sum of money to the plaintiffs because the money was the subject of a dispute between the plaintiff and the defendant. In *Norcross, supra*, Otis Brothers & Company had a claim against the Norcross brothers for installation of elevators at a courthouse in Allegheny County. Allegheny County owed money to the Norcross brothers resulting from construction of the courthouse. Otis Brothers gave notice to Allegheny County not to pay the Norcross brothers the amount admittedly owed to the Norcrosses and they had to sue Allegheny County to recover the debt. An action for malicious abuse of civil process was then brought by the Norcrosses against Otis on the basis of the alleged wrongful notice that was given. The Supreme Court held that the action would not lie as there was no abuse of civil process since only a notice had been given which had no legal effect. The court stated at 152 Pa. 487, 25 A. at 576:

It had not the effect of an attachment to tie up the fund, and had *the money been attached by legal proceed-*

---

**4.** In *Triester v. 191 Tenants Association, supra,* the tenants association commenced an action in equity against Treister, et al., and judgment on the pleadings was entered on behalf of Triester, et al., and the case dismissed.

*ings, it would be difficult to see how the plaintiff in the attachment could be mulcted in damages because of the failure of his attachment.* That the action did not operate as a legal restraint upon the fund in question is shown by the fact that Norcross Brothers immediately brought suit against the county and recovered. *Their loss was the delay of payment which was compensated by interest.* (Emphasis added)

The similarity in our case and *Norcross v. Otis Brother & Company, supra,* is that there was a delay in paying, but eventually payment was made plus interest.

 The appellant argues at page 335 of its brief: "The issue in this case may be succinctly stated: Does interference with execution on final judgment, by malicious abuse of court process constitute deprivation of the judgment creditor's property?" It is not the abuse of process that constitutes the necessary seizure of the property, it is rather the seizure of property that is a prerequisite to establishing abuse of process. In this case, all that the appellees did was to resist execution on their property.

The appellant also relies on *Adelman v. Rosenbaum,* 133 Pa.Super.Ct. 386, 3 A.2d 15 (1938) to support her contention that opposing execution constitutes a deprivation of property. *Adelman* involved an action for malicious abuse of legal process against an attorney who allegedly ordered a levy upon the plaintiffs' household goods knowing the plaintiffs were not the execution defendants named in the suit. This court found that the facts supported the finding of malice on the part of the attorney. The case, however, does not go into the issue of what constitutes seizure of property and does not support the claim that opposing execution constitutes seizure of property.[5]

5. In the brief filed on behalf of appellant it is alleged:

> *This case represents direct authority that a wrongful levy constitutes a seizure of property,* and it constitutes the only appellate word in Pennsylvania on this subject.[16] If this be the law, it follows logically that the reverse is also the law; i.e., interference with a proper levy also constitutes a deprivation of property because in the

The appellant also argues that although malicious use of process requires a seizure of property, the tort of abuse of process does not require seizure. Under the law of Pennsylvania, as it existed at the time of the cause of action in this case, a seizure of property was required for both the tort of abuse of process and malicious use of process. *Blumenfeld v. R.M. Shoemaker, supra; Ace v. Argonaut Insurance Company, supra.*

■ There was a delay of some nine months in paying the judgment in this case, but appellant was compensated with the payment of interest. The legal proceedings surrounding the attempted execution by appellant did not amount to seizure of her property. The money owed to the appellant did not become her property until it was paid to her.

Entry of summary judgment is proper under Pa.R.C.P. 1035 when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See *Thorsen v. Iron & Glass Bank,* 328 Pa.Super. 135, 476 A.2d 928 (1984). In considering a motion for summary judgment the court must view the evidence in the light most favorable to the non-moving party and enter judgment only if the case is clear and free from doubt. *Berardi v. Johns-Manville Corp.,* 334 Pa.Super. 36, 482 A.2d 1067 (1984); *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978). The court below properly determined as a matter of law that no property of the appellant had been seized and summary judgment was properly entered for the appellees.

Judgment affirmed.

same sense, it represents loss of dominion over property to which the execution creditor is clearly and presently entitled.
(Appellants' brief page 38; Emphasis in original)
We agree that a wrongful levy may constitute a seizure of property. In this case, the appellees did not wrongfully seek to attach the appellant's property. The appellees sought to protect their property from attachment by legal process and this simply does not constitute seizure of the appellant's property.